**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

LILLIAN C. DUVALL                                                    PLAINTIFF

V.                            No. 4:25-CV-00915-JM-ERE

SOCIAL SECURITY ADMINISTRATION,
Commissioner                                                        DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("RD") has been sent to United States District Judge James M. Moody, Jr. You may file objections if you disagree with the findings and conclusions set out in the RD. Objections should be specific, include the factual or legal basis for the objection, and be filed within fourteen days. If you do not object, you risk waiving the right to appeal questions of fact.

## I.    Background

On July 31, 2022, Ms. Lillian C. Duvall filed applications for Title II and Title XVI benefits due to depression, anxiety, traumatic brain injury ("TBI"), skull fractures, and nystagmus. *Tr. 21, 247*. Ms. Duvall's claims were denied initially and upon reconsideration. *Tr. 21*. At a January 19, 2024 hearing, an Administrative Law Judge ("ALJ") heard testimony from Ms. Duvall and a vocational expert ("VE"). *Tr. 43-73*. The ALJ issued a decision on July 5, 2024, finding that Ms. Duvall was not disabled. *Tr. 21-35*. The Appeals Council declined to review that decision, making the ALJ's decision the Commissioner's final decision. *Tr. 1-5*.

1

Ms. Duvall, who was twenty-two years old at the time of the hearing, attended some college and has past relevant work experience as a retail stocker and fast-food worker. *Tr. 33, 51-52, 69.*

## II.    The ALJ's Decision[1]

The ALJ found that Ms. Duvall had not engaged in substantial gainful activity since the alleged onset date of November 15, 2021, and had the following severe impairments: neurocognitive disorder, depression, anxiety, TBI, seizures, headaches, and asthma. *Tr. 24.* However, the ALJ concluded that Ms. Duvall did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tr. 24-27.*

According to the ALJ, Ms. Duvall had the residual functional capacity ("RFC") to perform light work, with the following limitations: (1) no more than occasional exposure to extreme cold, extreme heat, and hazards such as moving mechanical parts and unprotected heights; (2) no more than occasional exposure to pulmonary irritants such as fumes, odors, dust, gases, poorly ventilated areas, and industrial chemicals; (3) no exposure to a noise intensity level greater than moderate

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

as defined in the Selected Characteristics of Occupations; (4) no exposure to bright lights, meaning an intensity greater than the average office setting; (5) can perform simple and repetitive tasks with detailed but not complex instructions and requiring no judgments or decisions, with occasional changes in the routine work setting; (6) superficial exposure to the public and coworkers, meaning interaction that is limited solely for the purpose of task completion; (7) occasional interaction with supervisors; (8) can work in a low-stress work setting, meaning one requiring no conveyor belt work or strictly enforced daily production quotas, but instead the production quotas are based on the end of the workday measurements. *Tr. 27.*

Based on the VE's testimony, the ALJ found that a substantial number of potential jobs were available in the national economy that Ms. Duvall could perform, including merchandise marker, bench assembler, and routing clerk. *Tr. 34, 71.* Accordingly, the ALJ determined that Ms. Duvall was not disabled. *Id.*

## III.  Discussion

### A.    Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence]

3

adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

### B.    Ms. Duvall's Arguments for Reversal

Ms. Duvall contends that the Commissioner's decision is not supported by substantial evidence, because the ALJ: (1) erred in determining the relevant time period; (2) failed to properly develop the record; (3) erred at Step Two; and (4) assigned an erroneous RFC. *Doc. 8.* After carefully reviewing the record as a whole, I recommend affirming the Commissioner's decision.

### C.    Analysis

#### 1.  Relevant Time Period

Ms. Duvall, who filed under both Title II and Title XVI, asserts that the ALJ used the alleged onset date, which falls after the date last insured, resulting in an incorrect time period.[2] *Doc. 8 at 8.*

---

[2] The relevant time period begins on the alleged onset date for Title II and on the application date for Title XVI. https://www.ssa.gov/OP_Home/rulings/di/01/SSR2018-01-di-01.html

The ALJ considered a time period that began with the alleged onset date and ended on the date of the decision. Assuming this was error, it was harmless because the  period is larger than one that would have started on the application date. It also resulted in the ALJ considering records related to impairments resulting from Ms. Duvall's motor vehicle accident. *Tr. 28-29*. Since Ms. Duvall's impairments stem from this accident, the larger, relevant time period is to her benefit.

Again, any error related to the relevant time period was harmless.

### 2.  Development of the Record

Ms. Duvall vaguely asserts that the ALJ did not fully develop the record, claiming that "by silence and omission" the ALJ did not fully appraise the evidence. *Doc. 8 at 8*.

An ALJ has a basic duty to develop a reasonably complete record. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011); *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). Ms. Duvall "has the burden to offer the evidence necessary to make a valid decision about her claim." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). She "bears a heavy burden in showing the record has been inadequately developed. [She] must show both a failure to develop necessary evidence and unfairness or prejudice from that failure." *Combs v. Astrue*, 243 F. App'x 200, 204 (8th Cir. 2007). Although "an ALJ does have a duty to develop the record, this duty is not never-ending . . . ." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).

Absent unfairness or prejudice, reversal for failure to develop the record is not warranted. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

Ms. Duvall contends that the ALJ erred by not informing her that her mother could testify at the hearing. *Doc. 8 at 10*. To the contrary, Ms. Duvall was repeatedly advised before the hearing that she could call witnesses. *Tr. 156, 161*. If Ms. Duvall thought her mother was a necessary witness, she was or should have been aware that she was free to call her. Notably, Ms. Duvall did not include this alleged error in her appeal to the Appeals Council. *Tr. 188-189.*

The ALJ considered the relevant evidence of record, including objective findings and medical opinions, Ms. Duvall's testimony, and her reports to her doctors that she was improving after the accident. *Tr. 29, 489*. Treatment notes provided further evidence of improvement. *Tr. 635-637*. *See Locher v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992) (noting that improvement in condition supports an ALJ's finding that a claimant is not disabled). A consultative examiner noted generally normal mental status exams, and he found that Ms. Duvall only had mild cognitive delay. *Tr. 1080-1082*. There was no major issue that would have required further development.

Ms. Duvall has not demonstrated reversible error on this record.

### 3. Step Two

Ms. Duvall asserts that the ALJ should have found additional severe impairments at Step Two, such as spine fractures, vision problems, and action tremors in her hands. *Doc. 8 at 12-13*.

Step Two involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If not, benefits are denied. *Id.* A "severe" impairment significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c); 416.920(c). The claimant has the burden of proving that an impairment is severe. *Gonzales v. Barnhart,* 465 F.3d 890, 894 (8th Cir. 2006).

The ALJ discussed the motor vehicle accident as well as the resulting diagnoses and treatment. *Tr. 27-31*. Initially, Ms. Duvall had significant issues in balance, mobility, and self-care as well as moderate cognitive deficiency. *Tr. 29, 362, 429*. But after some physical therapy and conservative medication management, Ms. Duvall showed ongoing improvement. *Tr. 489, 635-642*. Additionally, she never was referred for mental health treatment and, generally, her neurological and mental status exams were normal. *Tr. 29-30, 1080*.

Contrary to Ms. Duvall's allegation, the ALJ did, in fact, mention spine fractures, vision issues, and hand problems throughout the decision. *Tr. 29-32*.

Additionally, a diagnosis alone does not infer disability; there must be a functional loss establishing the inability to engage in substantial gainful activity. See *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).

The ALJ committed no reversible error in the Step Two findings.

### 4.  RFC

Ms. Duvall asserts that "the RFC was a nonstandard, overly complex and detailed, and predicated upon no opinion evidence from any source . . . ." *Doc. 8.*

A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

At the initial review level, the state-agency medical expert found that Ms. Duvall could perform light work with additional restrictions but included no headache and seizure precautions. *Tr. 31-32, 81*. A second state-agency medical expert found that she could perform medium work. *Tr. 102-103*. The ALJ found

8

these opinions unpersuasive, noting that Ms. Duvall was actually more limited in a work setting. *Tr. 26-32*. The state-agency psychiatric consultants noted that Ms. Duvall had significant RFC mental restrictions, but the ALJ included even more mental restrictions. *Tr. 26-32, 79-80, 100-102*.

It is not clear how the ALJ's more restrictive RFC prejudiced Ms. Duvall. Again, Ms. Duvall improved with conservative treatment and her daily activities demonstrated that she could perform at least some work activity. *Tr. 28*. *Pierce v. Kijakazi*, 22 F.4th 769, 773 (8th Cir. 2022) (upholding ALJ's finding that conservative treatment tended to show that plaintiff's impairments were not disabling). The ALJ properly considered Ms. Duvall's conditions, symptoms, treatment, and daily activities, along with the medical opinion evidence, to formulate an RFC accurately reflecting the limitations supported by the record.

The ALJ's RFC is supported by substantial evidence.

## IV.   Conclusion

The ALJ applied proper legal standards in evaluating Ms. Duvall's claims, and substantial evidence supports the decision to deny benefits.

IT IS THEREFORE RECOMMENDED that the Court affirm the decision and enter judgment in favor of the Commissioner.

Dated 4 June 2026.

_____
UNITED STATES MAGISTRATE JUDGE

9